STATE OF MINNESOTA ex rel. H. W. CHILDS, Attorney General, v.
LEONARD STREUKENS.[1]

February 16, 1895.

No. 9313.

**Naturalization—Declaration of Intent by Minor—Ratification—Effect.**

A minor of foreign birth and foreign parentage came with his parents to
this state in 1859, when he was nine years of age, and he and they have
since resided here. Immediately after taking up his residence here his
father duly declared his intention to become a citizen of the United States,
served in the United States army during the war, and as far as appears
always acted in affirmance of the status acquired by such declaration of
his intention, but has never taken out naturalization papers. One month
and nineteen days before coming of age said minor declared his intention
to become a citizen of the United States, and after coming of age was re-
peatedly elected to public office, took the oath of office, and served as such
officer. Thereafter, at the November, 1894, general election, he was elected
county auditor. He never took out naturalization papers until January 10,
1895. *Held,* even if his declaration of his intention was invalid by reason
of his minority, yet, as he attempted to change his status to correspond
with the status of his father, such declaration was capable of ratification
on his coming of age, and he has fully ratified the same; he was eligible to
be elected to such office of county auditor, and is entitled to the same.

Quo warranto. Judgment of ouster.

*H. W. Childs,* Attorney General, and *Eugene G. Hay,* for relator.
*H. J. Peck* and *W. C. Odell,* for respondent.

CANTY, J.[2] This is a writ of quo warranto brought in the name
of the attorney general to test the title of the respondent, Streukens,
to the office of county auditor of Carver county. Respondent was
duly elected to that office at the general election held in November,
1892, and duly qualified and served his term of two years, which
ended on the first Monday in January, 1895. One Frederick West-
erman received the highest number of votes for that office at the
general election held in November, 1894, was declared duly elected,
and given a certificate of election in due form, and thereupon filed

[1] Reported in 62 N. W. 259.    [2] Mitchell, J., absent, took no part.

the proper bond, took the oath of office, and at the proper time demanded of respondent possession of the office. But respondent claims that Westerman was not eligible, and that therefore the election is void; that no successor to respondent has been elected; and that by G. S. 1894, § 707, he is entitled to hold over "until his successor is elected and qualified," and refuses to turn the office over to Westerman, but continues to discharge the duties of the same. Westerman was born in Germany, of German parents, on December 19, 1850, and with his parents immigrated to this country in 1859. In July of that year he and his parents settled in Carver county, and have since resided there. On July 30, 1859, his father, Gottleib Westerman, duly declared his intention to become a citizen of the United States, but has never taken out naturalization papers. Gottleib also served in the United States army during the war, from August, 1864, to September, 1865, and it does not appear that he ever changed his intention to become a citizen, or ever repudiated the status he had acquired by his declaration of such intention. On November 1, 1871, one month and nineteen days before Frederick Westerman became twenty-one years of age, he declared his intention to become a citizen of the United States. But he never took out naturalization papers until January 10, 1895, two days after the commencement of the term of office for which he claims to have been elected, as stated above. He was seven times elected justice of the peace, and served each term of seven consecutive terms, of two years each, from 1881 to 1894. He was also elected town clerk nine times, and served each term of nine consecutive terms, of one year each, from 1883 to 1893, and he duly took the oath of office each time he was so elected to either of said offices. Under sections 1 and 7 of article 7 of the constitution, Frederick Westerman was eligible to be elected to the office in question, without being a naturalized citizen of the United States, if before election he had duly declared his intention to become a citizen. See Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802. But it is contended by respondent that, as Westerman was a minor when he so declared his intention, such declaration is void; and in support of this proposition counsel cite Petition of Le Forestiere, 2 Mass. 419; Ludlam v. Ludlam, 26 N. Y. 356, 371, 376; Peck v. Young, 26 Wend. 613. These cases hold that a minor is incapable of contracting the obligation

of allegiance, or of making any election in regard to his citizenship. Conceding, without deciding, that a minor is incapable of making any such contract or election which will bind him, it does not follow that, under the circumstances of this case, it was not in the power of Frederick Westerman, when he came of age, to ratify the step he had so taken during his minority. And surely, if his declaration of his intention to become a citizen was capable of being ratified when he became of age, he has ratified the same. He has repeatedly and continually for years taken upon himself duties, obligations, and privileges which he would not be entitled to take unless he had duly declared his intention to become a citizen. It is stated, as a reason why a minor can make no election in regard to his citizenship, that during his minority his citizenship is the citizenship of his father, and that the father alone can change it. But in this case the father changed his status before the son attempted to change his, and the son merely attempted to change his so as to make it correspond with his father's. It was said by Chief Justice Fuller in Boyd v. Nebraska, 143 U. S. 135, 12 Sup. Ct. 375: "Clearly, minors acquire an inchoate status by the declaration of intention on the part of their parents. If they attain their majority before the parent completes his naturalization, then they have an election to repudiate the status which they find impressed upon them, and determine that they will accept allegiance to some foreign potentate or power, rather than hold fast to the citizenship which the act of the parent has initiated for them.   *   *   *   We are of opinion that James E. Boyd is entitled to claim that, if his father did not complete his naturalization before his son had attained majority, the son cannot be held to have lost the inchoate status he had acquired by the declaration of intention, and to have elected to become the subject of a foreign power." In the Le Forestiere Case, supra, it was intimated that the father could petition to change the status of his minor son, and this the father afterwards did before one of the judges. In Ludlam v. Ludlam, supra, it is said, on page 371: "The domicile of the minor child is always that of the father during his life, and I think the same rule applies in regard to citizenship." In the case at bar the father had changed his status, and clearly the act of the minor son in attempting to change his status to correspond with his father's was, at most, only voidable, and not ab-

solutely void; was capable of ratification, and has been fully ratified. Many of the principles laid down by Chief Justice Fuller in his opinion in the Boyd Case are applicable in this case, and those principles apply with greater force to the facts in this case than they do to the facts in the Boyd Case, although many of the facts in each case are similar.

We are of the opinion that Frederick Westerman was eligible to be elected to the office in question, and is entitled to said office, and the possession thereof; that respondent is not entitled to said office; and that the relator is entitled to judgment of ouster against him. Let judgment be entered accordingly.