# STATE EX REL. HATTIE M. ALDRIDGE v. NITA M. ALDRIDGE.[1]

## June 12, 1925.

## No. 24,764.

**Status of child in Minnesota governed by law of this state.**

1. A state has the right to determine the status of persons domiciled within its territory. Whether a child within the jurisdiction of a state can be removed therefrom does not depend on the law of the place whence he came, but on his rights under the law of the state in which he is found.

**Comity will not enforce decree of divorce court in Iowa.**

2. The custody of a minor child was awarded to her grandmother by a decree of the district court of the state of Iowa which divorced the child's parents. Thereafter the grandmother permitted the mother to bring the child to Minnesota, where she was cared for by the mother for several years. There was no understanding that she was to be restored to the grandmother's custody. Under these circumstances, comity does not require the courts of this state to lend their aid to the enforcement of the Iowa decree by restoring the custody to the grandmother, regardless of the child's wellbeing.

**Custody of child awarded to mother.**

3. The welfare of the child will be better served by leaving her for the present with her mother instead of awarding her custody to the grandmother.

1. See Divorce, 19 C. J. p. 367, § 831.
2. See Divorce, 19 C. J. p. 367, § 831.
3. See Divorce, 19 C. J. p. 367, § 831.

Upon the relation of Hattie M. Aldridge the district court for Steele county granted its writ of habeas corpus, directed to Nita M. Aldridge, to determine the custody of a child. From an order of the court commissioner, acting as the district court judge, awarding the

[1]Reported in 204 N. W. 324.

custody of the child to Hattie M. Aldridge, Nita M. Aldridge appealed.  Reversed and writ discharged.

*Leach & Leach,* for appellant.

*Nelson & Nelson,* for respondent.

LEES, C.

The right to the custody of Winifred Aldridge, a little girl $7\frac{1}{2}$ years old, is asserted by her paternal grandmother against the child's mother.  To obtain the custody, the grandmother sued out a writ of habeas corpus, upon which there was a hearing before the court commissioner of Steele county, who awarded the child to the grandmother.  The mother appealed to this court, where the case was submitted upon the evidence received by the court commissioner and additional evidence taken by a referee appointed by this court.

The child's parents were married in November, 1916, and thereafter resided in Britt, Iowa, until they were divorced by the decree of the district court of Hancock county, Iowa, in May, 1921.  The decree awarded the custody of the child and a younger brother to the grandmother who, immediately after the divorce was granted, permitted the mother to take both children to Minnesota.  There the mother found employment as housekeeper for J. H. Magner, a farmer residing in Steele county.  In December, 1921, she gave birth to a third child, and in July, 1923, to a fourth.  Magner is the father of the last child.

In January, 1925, the grandmother commenced this proceeding. While it was pending and on February 5, 1925, the mother married Magner, who immediately applied to the district court of Steele county for leave to adopt the three children who were the issue of the first marriage.  The application is still pending.

Two questions are presented for determination here: (1) What effect should be given to the Iowa decree? (2) Will Winifred's welfare be better served by leaving her in the custody of her mother or by transferring the custody to the grandmother?

It is a principle of general application that every state has "the right to determine the status, or domestic and social condition of

persons domiciled within its territory," Hunt v. Hunt, 72 N. Y. 217, 227, 28 Am. Rep. 129, and "whether a person within the jurisdiction of a state can be removed therefrom depends, not on the laws of the place whence he came * * * but on his rights * * * as they are fixed * * * by the laws of the state * * * in which he is found." Woodworth v. Spring, 4 Allen (Mass.) 321, 323, In re Williams, 77 N. J. Eq. 478, 77 Atl. 350, 79 Atl. 686.

In Wakefield v. Ives, 35 Iowa, 238, a decree of divorce had been entered in the district court of Hennepin county in this state, by which the custody of a minor child was awarded to the mother. Thereafter the child was taken into the state of Iowa. To regain the custody, the mother sued out a writ of habeas corpus in that state and the child was awarded to her. The opinion of the court states that nothing in the record showed how or when the defendant obtained the custody of the child, or how, by whom or for what purpose, she was brought into the state of Iowa, and that, in the absence of such a showing, full faith and credit should be given to the Minnesota decree.

In Sykes v. Speer (Tex. Civ. App.) 112 S. W. 422, it was held that the right to the custody of minor children conferred upon their mother by a decree of divorce was a personal right which she might waive in favor of her divorced husband. If that is sound doctrine, and we think it is, there was a waiver of the right in the present case. Winifred was brought to this state by her mother with the consent of her grandmother. She lived here with her mother for 3½ years before her grandmother saw fit to assert the right of custody conferred on her by the Iowa decree. The child's stay in this state was not temporary. There was no understanding that she was to return to Iowa or be restored to the custody of her grandmother. She became a resident of this state and is subject to its jurisdiction.

A consideration of all the facts and circumstances leads to the conclusion that comity does not require the courts of this state, regardless of the well-being of the child, to lend their aid to the enforcement of the Iowa decree by returning Winifred to the custody

of her grandmother. A child is not a chattel to which title and the right of possession may be secured by the decree of any court. If the decree had been rendered by a domestic court of competent jurisdiction, it would not have conclusively established the right to the custody of the child. In a contest between rival claimants, this court would have been free, notwithstanding the decree, to award the custody solely with an eye to the child's welfare.

It is a cardinal rule that the welfare of a child is the prime consideration in determining to whom the custody shall be given. Winifred's mother has cared for her continuously since May, 1921. No fault is found with the food, clothing and shelter she has had. Apparently the grandmother was content to leave her in charge of the mother, without making any effort to ascertain whether she was suitably cared for. Only lately has she shown any interest in the child. She is alone in the world. Her health is somewhat impaired. She must devote her days to some gainful occupation to maintain herself. The maintenance of the child would impose an additional burden upon her. She could not have her with her during the working hours of the day. She is virtually a stranger to the child. The chief advantages she could give her would be wholesome moral influences and an opportunity to attend the Britt schools. The evidence indicates that if Winifred's father were to spend all or part of his time in Britt and make his home with his mother, the moral atmosphere would not be good. The grandmother, although an excellent woman, cannot give Winifred advantages which clearly outweigh those a child enjoys when reared by a mother with other children of the same blood.

The mother is young. Apparently she lacks self-control. She has not always respected the moral code which good women observe. Her first marriage was a complete failure. She has led a troubled life. Perhaps she has learned enough in the school of experience to guide her aright in the future. Her correspondence with a man named Dunsmore and his presence in the Magner home by her consent, as well as Magner's, is the most damaging evidence against her. She professes to have definitely turned away from this man and others like him, now that she has become Magner's lawful wife.

Magner says that he intends to re-establish a home for himself, his wife, their child and the children his wife bore to her first husband. Life on a farm has many advantages for children. If Magner and his wife live up to their professions, Winifred will be better off where she is than she would be if separated from her mother and brothers to grow up in a small town with her grandmother. On the whole, we deem it best to leave her where she is for the present. If, in the future, circumstances arise from which it becomes apparent that a change of custody should be made, the courts are open to a renewal of the present application.

The order of the court below is reversed and the writ discharged.

Mr. Justice Holt took no part.