STATE EX REL. LOIS LARSON v. ALBERT P. LARSON.[1]

January 12, 1934.

No. 29,811.

[1]Reported in 252 N. W. 329.

*R. Vern Eckman,* for appellant (respondent below).
*G. A. E. Finlayson,* for respondent (petitioner below).

*DEVANEY, Chief Justice.*

Plaintiff and defendant were married at Duluth, Minnesota, in 1928 and subsequently became domiciled in Iowa. There was born of the marriage one child, a girl who will be five years of age in January, 1934. On March 12, 1931, the parties were divorced by a decree of the Iowa court. As a part of the divorce proceedings the Iowa court awarded the custody of this child alternately to each parent for six months of each year. The decree provided for a readjudication of the question of custody when the child should become five years of age. After the divorce decree was entered the plaintiff mother returned to and reëstablished her domicil in Duluth, Minnesota, where she since has continued to live. In accordance with the Iowa decree, the child thenceforth spent six months of each year in Iowa with the father and six months of each year in Minnesota with the mother. About September 12, 1933, and at the expiration of her third six-months period, the mother refused to surrender the child to the father. The child was then in Minnesota, where the defendant father had come to take her back to Iowa. After some delay occasioned by a hearing on an order to show cause why plaintiff should not have permanent custody, the mother finally surrendered the child to the father. Before the father could remove the child to Iowa, however, plaintiff served on him a writ of *habeas*

*corpus* challenging his right to the child's custody. At the hearing had pursuant to said writ, the lower court made an order awarding custody of the child to the plaintiff mother until further order. From such decree this appeal is taken.

Defendant contends (1) that this court has no jurisdiction over this minor child and cannot make a decree affecting its custody; and (2) that, even if this court has such jurisdiction, the evidence does not show such a change of circumstances as would justify this court in disregarding the decree of the Iowa court. These contentions present the only two issues in the case.

■ The question of jurisdiction as here presented is a new one in this state. An examination of certain fundamental principles of conflict of laws is therefore necessary, bearing in mind always that here we are not dealing with substantive property rights but with the question of the domicil of a child and the jurisdiction of courts to deal with matters of custody, which jurisdiction depends upon a determination of the question of domicil. A proceeding to determine custody of a minor child partakes of the nature of an action *in rem,* the *res* being the child's status or his legal relationship to another. Except where necessary as a police measure (see Hartman v. Henry, 280 Mo. 478, 217 S. W. 987—neglected child), it would seem that the only court which has power to fix, to change, or to alter this status is the court of the state in which the minor child is domiciled. Harris v. Harris, 115 N. C. 587, 20 S. E. 187, 44 A. S. R. 471; Lanning v. Gregory, 100 Tex. 310, 315, 99 S. W. 542, 10 L.R.A.(N.S.) 690, 123 A. S. R. 809; Kline v. Kline, 57 Iowa, 386, 10 N. W. 825, 42 Am. R. 47; Goodrich, Conflict of Laws, p. 305, § 131. The Minnesota court apparently has recognized this general rule in State ex rel. Aldridge v. Aldridge, 163 Minn. 435, 436-437, 204 N. W. 324; see also State ex rel. Williams v. Juvenile Court, 163 Minn. 312, 314, 204 N. W. 21. An unemancipated minor, being incapable of choosing his own domicil, generally has the same domicil as his father. Beale, *Domicil of an Infant,* 8 Cornell L. Q. 103, 104; see State ex rel. Childs v. Streukens, 60 Minn. 325, 327, 62 N. W. 259. A wife's domicil generally is that of her husband. Kramer v. Lamb, 84 Minn. 468, 471, 87 N. W. 1024; see Parks, *The*

*Domicil of a Married Woman,* 8 Minn. L. Rev. 28. Where husband and wife are divorced or judicially separated, however, the wife thereafter may acquire a domicil separate from that of her husband. Bechtel v. Bechtel, 101 Minn. 511, 514, 112 N. W. 883, 12 L.R.A.(N.S.) 1100 *(semble);* see Putman, *Conflict of Laws as to Domicil,* 15 Minn. L. Rev. 668, 678; Restatement, Conflict of Laws, § 31. In case of a divorce or separation, a minor child's domicil is that of the parent to whose custody it has been legally given. Restatement, Conflict of Laws, § 34. So, if in a divorce proceeding the custody of a minor is awarded to the mother, who subsequently changes her domicil, the minor's domicil follows hers. Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663; Wilkinson v. Deming, 80 Ill. 342, 22 Am. R. 192; Toledo Traction Co. v. Cameron (C. C. A.) 137 F. 48.

Applying the above discussed principles to the case at bar, we conclude that the minor child was domiciled in Minnesota at the time of the commencement of this action. After the Iowa divorce the mother changed her domicil to Minnesota. The minor's domicil is that of the parent to whose custody it has been awarded. So for each of the six-months periods that the mother had the custody the minor's domicil was in Minnesota. When this action was commenced the child had been in Minnesota for a few days over the six-months period but had not been returned to Iowa. The domicil would not be reëstablished in Iowa until the minor had returned there.

Concluding, therefore, that the minor's domicil was in Minnesota at the time this proceeding was commenced, we come to the further question of whether under the full faith and credit clause of the federal constitution, art. IV, § 1, we are bound to recognize and to enforce the Iowa decree and thereby to relegate the parties to the Iowa court for any relief they may desire. All parties were domiciled in Iowa at the time of the original decree awarding custody alternately to each parent. No one here challenges the well settled rule that that decree is binding on the Minnesota court as to the right to the custody of the child at the time, and under the circumstances, of its rendition. For a collection of cases so hold-

ing, see note in 20 A. L. R. 815. Defendant points out that admittedly the Iowa court had jurisdiction when it rendered the original decree and that such decree was conditional and provided for a readjudication of the question of custody when the child should become five years of age. From this he contends that the Iowa court's jurisdiction has not been lost by the fact that the parties removed themselves from the state, and therefore, that since only one court can have jurisdiction in a matter of this kind, this court is without jurisdiction. While it is true generally that where jurisdiction by personal service once is acquired it is retained until a final determination of the issue and is not lost or defeated by the fact that the parties remove themselves from the state (Darrah v. Watson, 36 Iowa, 116, 119; Fitzsimmons v. Johnson, 90 Tenn. 416, 17 S. W. 100; see Michigan Trust Co. v. Ferry, 228 U. S. 346, 353, 33 S. Ct. 550, 57 L. ed. 867), yet we cannot accede to defendant's contention for the reason that the *res* is here the minor's status, and we believe jurisdiction over this status follows the domicil of the child. To hold otherwise would be to disregard the underlying consideration of the child's welfare, which is a matter of paramount importance to the state and to society. In Griffin v. Griffin, 95 Or. 78, 187 P. 598, a divorce was granted in California, where both parties were domiciled. The mother was awarded custody of the minor children but was ordered not to remove them from the state. Subsequently the court granted permission to remove the children. The mother went to Oregon, where she established her domicil and retained the children. The California court later modified the decree, giving custody to the father. In *habeas corpus* proceedings brought in Oregon, the Oregon court refused to recognize the California decree and awarded custody to the mother. The facts of this case are very similar to the case at bar, and we believe the principle therein announced controls. The following cases are further authority for the view that the first court loses jurisdiction when the minor child becomes domiciled elsewhere. In re Bort, 25 Kan. 308, 37 Am. R. 255; Milner v. Gatlin, 139 Ga. 109, 76 S. E. 860; Groves v. Barto, 109 Wash. 112, 186 P. 300, commented upon in 20 Columbia L. Rev. 491; see In re Alderman, 157 N. C. 507, 73 S. E. 126, 39

L.R.A.(N.S.) 988. Professor Beale approves the Griffin case and the view that we are here taking in *The Progress of the Law,* 34 Harv. L. Rev. 50, 59. He maintains that while an original decree everywhere is entitled to full faith and credit, the power of the first court to modify or to change that decree is lost when the parties become domiciled in another state. Respectable authority has taken a contrary view. State ex rel. Nipp v. District Court, 46 Mont. 425, 128 P. 590, Ann. Cas. 1916B, 256; see Stetson v. Stetson, 80 Me. 483, 15 A. 60; *cf.* Wakefield v. Ives, 35 Iowa, 238. Professor Goodrich upholds this latter view in *Custody of Children in Divorce Suits,* 7 Cornell L. Q. 1, and maintains that the first court does not lose jurisdiction until there has been a final determination of the litigation, and therefore that other states must give full faith and credit to the first state's decree. Both views are supported by authority. We think the better rule is that which allows the state of the new domicil, in this case Minnesota, to determine the custody of the minor while there domiciled. In this connection both counsel have cited and relied upon State ex rel. Aldridge v. Aldridge, 163 Minn. 435, 204 N. W. 324. We think that case is not here controlling because that decision was placed on the grounds of waiver of a right of custody.

■ The second question as to whether or not there was a change of circumstances sufficient to warrant this court in awarding custody to the mother is not difficult of decision. There is ample testimony in the record tending to show such a change of circumstances since the rendition of the last decree by the Iowa court as is detrimental to the child's welfare. The evidence shows that the father, perhaps with little thought of the consequences, implanted in the child's mind such fear and terror of the mother and of the mother's actions as to affect directly the happiness and welfare of the child. The father often left the child in charge of a maid who had no real interest in her care or welfare. There was also a question as to whether the father properly treated the child for a tonsillitic condition, and in connection with such care as was given there was evidence that he poisoned the child's mind against the mother by stating that the mother would use means much more extreme and pain-

ful than those he was using to remedy the condition. Regarded separately, these offenses may appear of small significance, but considered together they present a picture of indifference to the child's happiness and welfare or a failure to appreciate or to understand the child's well-being and the infinite capacity of a child for suffering. The welfare of the child is the first concern of the state. These factors are sufficient to warrant the conclusion that circumstances have so changed since the last decree of the Iowa court that the best interests of the child require that she be given to the mother. The factors which influenced the trial court to find a change of circumstances are equally persuasive here and are so well stated in his memorandum that we quote therefrom with approval.

"A child of divorced parents should not live for long periods, first with one parent and then with the other. The daily routine, the habits of the household, the background of the community life, the conduct of the child upon which emphasis is laid, are all likely to be so different that the child is likely to be in a temperamental turmoil most of the time. Experience shows that such children often develop into problem children and the behavior conflicts that arise have later to be controlled by the juvenile courts. The evidence in this case shows that, doubtless without intending to do so, the father induced such fears and misunderstandings in the mind of the child that her mother had to devote a large part of the time she has had the custody since last March to dissipating such fears and misunderstandings. A repetition of such experiences ought to be avoided. Helen is now reaching school age. Obviously from her conduct at the hearing she is bright, observing and soon her memory will begin retaining current impressions. Soon she will be old enough to realize that she is being shuttled back and forth between her parents—not primarily for her own welfare, but to satisfy the selfish desires of her parents. Each shift from now on will leave a scar on the child's memory. She will sooner or later begin to wonder why she cannot have a continuing home as other little girls have. The next step will be resentment against one or both

of her parents. Both parents are now deserving of her respect and affection. It is thought that such feeling is more likely to continue unabated if she live with her mother, subject to reasonable visitations by her father.

"It is a cardinal rule that the welfare of the child is the prime consideration in determining to whom the custody shall be given. The father, although an excellent man, cannot give a five-year old girl the care and advantages which a good mother can give her."

We conclude (1) that this court has jurisdiction, and (2) that the custody of this child should be awarded to the mother.

So ordered.