150 N.J. Super. 556 (1977)
376 A.2d 214
BESTY C. MAYER, PLAINTIFF
v.
MARTIN C. MAYER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 24, 1977.
*559 Mr. Gary N. Skoloff for plaintiff (Messrs. Skoloff & Wolfe, attorneys).
Mr. Gardner B. Miller for defendant (Messrs. Miller & Lawless, attorneys).
DUFFY, J.S.C.
Plaintiff and defendant were married on January 13, 1962 and separated on December 1, 1973. Plaintiff wife filed her complaint for divorce on June 5, 1975, alleging a cause of action based on 18 months' separation. The parties were divorced by judgment of this court on November 23, 1976.
Two children were born of the marriage, Dana, 13 years of age, and William, 11. They are in the custody of the plaintiff.
Defendant husband is now a practicing member of the Bar of this State, having successfully pursued various business ventures as a real estate broker and developer. At the present time he is attempting to develop several properties in the Livingston, New Jersey, area, and testified to possible ventures in Arizona and Pennsylvania.
Plaintiff has recently undergone an operation for cancer and is under continuing medical and psychiatric care. She is a licensed real estate saleswoman and is affiliated with a local agency, but she has not had a significant income from those efforts.
*560 Trial of this matter consumed about three days. At the conclusion of oral testimony the court ordered counsel for the parties to submit summations as to law and fact covering equitable distribution, support and alimony, custody, counsel fees and costs. This opinion will dispose of those issues.
[The court here awarded plaintiff the marital residence and certain personal property by way of equitable distribution under N.J.S.A. 2A:34-23, applying the guidelines suggested in Rothman v. Rothman, 65 N.J. 219, 232 (1974), plaintiff to be solely responsible for the mortgage, taxes and upkeep of the home. The court also fixed the amounts of alimony and child support defendant is to pay plaintiff; he is to provide a policy insuring his life in an amount of at least $50,000, naming the children as irrevocable beneficiaries and to be maintained until the younger shall have become emancipated, as well as health and medical insurance for them, including major medical coverage, to be maintained until each is emancipated. In addition, he is to be responsible for any extraordinary medical expenses incurred by plaintiff for the treatment of her cancer.]
The issue of custody of the minor children of the marriage is seriously contested. During settlement negotiations held at a conference in chambers the court suggested that, in view of plaintiff's continuing health problems, an order of joint custody might be appropriate in this case.
Plaintiff, in her summation, requests that the court's order of joint custody, if entered, name one parent as the "primary custodian as a matter of law." Defendant "welcome[s] dual custody" in his summation.
Two questions are thus presented. Can this court order joint custody, that is, does the court have the authority to do so? If so, then in what fashion can an order of joint custody, if appropriate, best be implemented?
The question of joint custody has topical as well as legal significance, having been discussed recently in the New York Times Sunday Magazine (October 31, 1976) and being the subject of a pending suit naming the Chancery Division of *561 Essex County as defendant. In addition, the concept of joint custody has never been fully explored in any reported decision of our courts. The time is ripe for a full review of the legal and statutory bases for an award of custody, in general and joint custody, in particular.
The Superior Court of New Jersey has "original general jurisdiction throughout the State in all causes." N.J. Const. (1947), Art. VI, § III, par. 2. Further, the legislature has vested in this court the authority to make such order, after judgment of divorce or maintenance, "as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just * * *." N.J.S.A. 2A:34-23. Clearly, this legislative grant of authority would include the authority to order "joint," "divided" or "split" custody. Assuming, therefore, that the circumstances of the parties and the nature of the case render an award of joint custody, "fit, reasonable and just," there is no reason why such an order should not be entered.
New Jersey is in the majority of states which follow the traditional "best interests of the child" rule in custody determinations. The "best interests" doctrine was first announced by Judge (Later Justice) Brewer in Chapsky v. Wood, 26 Kan. 650 (1881), in which the Kansas Supreme Court repudiated the rule which held that the rights of parents were primary over those of third parties to custody of their children. The doctrine gained popularity after the decision in Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624 (1925), in which the New York Court of Appeals held that the Chancellor acted as parens patriae to do what is best for the interests of the child.
The "best interests" standard is the one advocated by the Family Law Section of the American Bar Association in § 402 of the Uniform Marriage and Divorce Act. That act has undergone a proposed revision, but § 402 was left unmodified. See 7 Fam. L.Q. 135 (1973).
*562 Other standards for placement of custody have been proposed, but they have not yet had as wide acceptance as the "best interests" test has had. Goldstein et als. propose the "least detrimental available alternative." Goldstein, A. Freud and Solnit, Beyond the Best Interests of the Child (1973). This choice would maximize,
* * * (i)n accord with the child's sense of time, the child's opportunity for being wanted and for maintaining on a continuous, unconditional, and permanent basis a relationship with at least one adult who is or will become the child's psychological parent. [at 99]
"Sense of time," "opportunity for being wanted" and "psychological parent" are terms of art coined by the authors.
Another approach is that of John Batt, who approaches child custody questions "from a psychologically oriented child development standpoint." Batt, "Child Custody Disputes: A Developmental-Psychological Approach to Proof and Decisionmaking", 12 Willamette L.J. 491 (1976). He proposes that the court take into account five phases of development of the human child before making a custody placement. The phases generally follow the growth of the child from infancy to young adulthood.
The "best interests" standard was authoritatively announced in New Jersey in 1944 by the Armour decision and has since been followed by our courts. Armour v. Armour, 135 N.J. Eq. 47, 52 (E. & A. 1944). See S. v. H.M., 111 N.J. Super. 553, 559 (App. Div. 1970); DiBiano v. DiBiano, 105 N.J. Super. 415, 418 (App. Div. 1969). Other formulations of the "best interests" test require the court to consider the safety, happiness and physical, mental and moral welfare of the child. Fantony v. Fantony, 21 N.J. 525, 536 (1956); Schwartz v. Schwartz, 68 N.J. Super. 223, 233 (App. Div. 1961); Sheehan v. Sheehan, 38 N.J. Super. 120, 125 (App. Div. 1955); Matflerd v. Matflerd, 10 N.J. Super. 132, 136 (App. Div. 1950).
The court has broad discretion in dealing with the custody of a child, being always aware that the welfare and *563 happiness (best interests) of the child is the controlling consideration. Sobel v. Sobel, 46 N.J. Super. 284, 286 (Ch. Div. 1957).
The court will consider the wishes of an infant child as to custody, if the child is of an age and capacity to form an intelligent preference as to custody. N.J.S.A. 9:2-4; Gardner v. Hall, 132 N.J. Eq. 64, 81 (Ch. Div. 1942), aff'd 133 N.J. Eq. 287 (E. & A. 1943). The preference of the young child has a place, although not a conclusive place, in determining custody. Callen v. Gill, 7 N.J. 312, 319 (1951); Sheehan v. Sheehan, infra, 51 N.J. Super. at 291.[2]
Commentators have suggested that a prerequisite to an award of custody should be the appointment of independent counsel for the child so as to safeguard his or her rights. Comment, "A Child's Right to Independent Counsel in Custody Proceedings: Providing Effective `Best Interests' Determination through the Use of a Legal Advocate," 6 Seton Hall L. Rev. 303 (1975); Inker and Peretta, "A Child's Right to Counsel in Custody Cases," 5 Fam. L.Q. 108 (1971). While this court has assigned independent counsel for children in the past, such a procedure, which entails considerable expense, should be utilized only where the interests of the child are truly adverse to those of the parent(s). One example of such adverse interest would be the situation where neither parent is a fit custodian. That is not the case here.
To which parent, then, should custody be awarded? Our courts have long recognized that custody of a child of tender years ordinarily is awarded to the mother if she is a fit and proper person. Esposito v. Esposito, 41 N.J. 143, 145 (1963). The theory is that the mother will take better *564 and more expert care of the small child than the father can. Matflerd v. Matflerd, supra, 10 N.J. Super. at 137; Seitz v. Seitz, 1 N.J. Super. 234, 240 (App. Div. 1949). These considerations must always be considered subordinate, however, to what is truly in the child's best interest. Vannucchi v. Vannucchi, infra, 113 N.J. Super. at 47; DiBiano v. DiBiano, supra.
In the present case the question is not so much "to which parent should custody be awarded" as it is "should custody be awarded to both parents?" Nelson states that
Where both parents are suitable persons to have the custody of their children and are devoted to them, they should be given as nearly equal rights to the custody of the children as is practical and compatible with the convenience, education and welfare of the children, since it is against public policy to destroy or limit the relation of parent and child and the child is entitled to the love and training of both parents. [2 Nelson, Divorce and Annulment (2 ed. 1961) §§ 15, 17, at 256-57]
N.J.S.A. 9:2-4 makes it clear that, with regard to an order or judgment of custody,
* * * the rights of both parents, in the absence of misconduct, shall be held to be equal, and they shall be equally charged with their care, nurture, education and welfare, and the happiness and welfare of the children shall determine the custody or possession.
This statutory grant of equal rights in both parents to custody effectively reversed the holding of the common law wherein the father had the preferred right to custody of his minor child, unless disqualified for same reason. See Gardner v. Hall, supra, 132 N.J. Eq. at 77; Morris v. Wardell, N.J., 67 A. 850 (1907).
Our case law is replete with decisions reaffirming the existence of equal rights to custody in both parents. See, e.g., Vannucchi v. Vannucchi, 113 N.J. Super. 40 (App. Div. 1971); Sheehan v. Sheehan, 51 N.J. Super. 276 (App. Div. 1958), certif. den. 28 N.J. 147 (1958); Fantony v. Fantony, 31 N.J. Super. 14 (App. Div. 1954), aff'd as *565 modified, 21 N.J. 525 (1956). One of our later cases holds that the parental right to the care of his or her child is a fundamental right subject to constitutional protection. In re J.S. & C., 129 N.J. Super. 486 (Ch. Div. 1974).
Notwithstanding the enlightened views of the Legislature and the courts of this State, no authoritative decision has ever been rendered by our courts on the subject of joint custody. It cannot be said, however, that joint ("dual," "alternating," "divided," "split") custody enjoys great popularity across the country. Decisions on joint custody in other jurisdictions demonstrate either a guarded acceptance or a clear dislike for the concept. See Annotation, 92 A.L.R.2d 691 (1963).
Courts approving joint custody generally agree that a child is entitled to the love, nurture, advice and training of both mother and father. The experience is said to give the child the experience of two separate homes. Brock v. Brock, 123 Wash. 450, 212 P. 550 (Sup. Ct. 1923); Mullen v. Mullen, 188 Va. 259, 49 S.E.2d 349 (Sup. Ct. App. 1948). Courts disapproving the concept point to the possibility of resentment against the parents who shuffle the child back and forth, State ex rel. Larson v. Larson, 190 Minn. 489, 252 N.W. 329 (Sup. Ct. 1934), the development of a sense of insecurity, Heltsley v. Heltsley, 254 S.W.2d 973 (Ky. Ct. App. 1951), and the destructive effect of instability in the human factors affecting a child's emotional life. Kaehler v. Kaehler, 219 Minn. 536, 18 N.W.2d 312 (Sup. Ct. 1945).
Two principles can be distilled from the reported cases. The first is that the primary consideration in an award of joint custody is the welfare and best interest of the child. Bergerac v. Maloney, 478 S.W.2d 111 (Tex. Civ. App., 1972); Brocato v. Walker, 220 So.2d 340 (Miss. Sup. Ct. 1969); Davis v. Davis, 354 S.W.2d 526 (Mo. App. 1962). The second principle is that decision must depend upon the facts of the particular case. Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887 (Sup. Ct. 1961); Andrews v. Geyer, 200 Va. 107, 104 S.E.2d 747 (Sup. Ct. *566 App. 1958); Stillmunkes v. Stillmunkes, 245 Iowa 1082, 65 N.W.2d 366 (Sup. Ct. 1954).
Several factors are said to affect the decision to award joint custody. Among these are the wishes of the parents, as in Ward v. Ward, 88 Ariz. 130, 353 P.2d 895 (Sup. Ct. 1960), where the court stated that a sincere desire on the part of the parent to share his child's companionship should not be lightly dismissed. Another important factor is the age of the child, the general rule being that the courts should not divide the custody of a child of tender years. Even this rule is not absolute, as in Lutker v. Lutker, 230 S.W.2d 177 (Mo. App. 1950), where joint custody of a 2 1/2-year-old was approved, largely because of the devotion of the parents to the child and the short distance between their respective homes.
The distance between the homes of the parents becomes an important factor if the distance is such as to prevent visitation by the noncustodial parent. In that case an award of joint custody may be appropriate. Maxwell v. Maxwell, 351 S.W.2d 192 (Ky. Ct. App. 1961).
Assuming that an order of joint custody is appropriate, most courts hold that a frequent shifting from home to home is unnecessarily harmful to the child and should not be permitted. Thus, in Mason v. Mason, 163 Wash. 539, 1 P.2d 885 (Sup. Ct. 1931), the court condemned an order of joint custody which gave custody of a two-year-old to the mother from noon on Sunday to noon on Thursday, and to the father from Thursday noon to Sunday noon. The Court said, "Thus the child becomes a perpetual traveler.
This constant change in environment, discipline and control undoubtedly would prove to be harmful to the child." Id. at 886.
An award giving primary custody to one parent and giving the other parent custody on alternate weekends has been upheld. Murnane v. Murnane, 14 A.D.2d 943, 221 N.Y.S.2d 28 (App. Div. 1961); Robertson v. Robertson, 140 Cal. App.2d 784, 295 P.2d 922 (D. Ct. App. 1956).
*567 Courts sometimes disapprove custody arrangements which alternate custody between the parents for equal periods of time, especially where such shifts interfere with schooling. In McLemore v. McLemore, 346 S.W.2d 722, 92 A.L.R.2d 691 (Ky. Ct. App. 1961), an award of joint custody which shifted three young children every week was terminated because of the intolerable burden such frequent, though equal, shifts placed on the children. Periods of time of 6 months and 12 months have been approved for pre-school children. Travis v. Travis, 163 Kan. 54, 180 P.2d 310 (Sup. Ct. 1947); Ramsden v. Ramsden, 32 Wash.2d 603, 202 P.2d 920 (Sup. Ct. 1949).
The most widely accepted form of joint custody award is the one wherein one parent has custody during school months and the other custody during the summer. Annotation, 92 A.L.R.2d 691, § 11(a), at 726 (1963). This form of award solves the problem of distance between the homes of the parents and generally avoids frequent shifts in custody. The attitude of courts granting this form of custody is well illustrated by Fago v. Fago, 250 S.W.2d 837 (Mo. App. 1952), where it was said
The pleasure and benefit of friendly association with both parents should be accorded to a child ... She needs to have the benefit of her father's guidance, love and affection as well as that of her mother and grandmother ... It will be a broadening and valuable experience for (the child) to spend a part of each summer in the State of New York with her father, leaving ten months of the year for the exertion on (the child) of the beneficent influence of mother, grandmother and aunt in her customary home surroundings in St. Louis. [at 842-43]
There is no doubt that the distance between the homes of the parents was an important factor in that case. Accord, Stockton v. Stockton, 459 S.W.2d 532 (Mo. App. 1970); Stanfield v. Stanfield, 350 P.2d 261 (Okl. Sup. Ct. 1960); Barrier v. Brewster, 349 S.W.2d 823 (Ky. Ct. App. 1961); Dworkis v. Dworkis, 111 So.2d. 70 (Fla. App. 1959).
*568 In the present case, the minor children are 13 and 11 years of age and attend school in this State. Plaintiff has requested permission to move to Pittsburgh, Pennsylvania, to be near her parents. Under these circumstances, if plaintiff were given sole custody, visitation by defendant would be both difficult and expensive.
The children are not of such tender years that an award of joint custody would be detrimental to them. They are entitled to know, love and respect their father just as much as they know, love and respect their mother. No order of sole custody in the mother, even with unlimited visitation by the father, could possibly give these children the contact with their father that they need and have a right to. For that reason, the court orders that the parties shall have joint custody of the children. Plaintiff will have physical custody from September to June, and defendant will have physical custody during July and August.
Plaintiff's request to move to Pittsburgh is granted. Defendant shall be permitted visitation one weekend a month in the Pittsburgh area during the school year. In addition, defendant shall have free access to the children via telephone at a reasonable hour and for reasonable lengths of time.
Defendant's visitation shall also include a four-day period of visitation during the Christmas and Easter vacations at either location. The parties are, of course, free to supplement this minimum visitation schedule as they may wish and are able to agree upon. Costs of transportation of the children between New Jersey and Pennsylvania will be borne equally by the parties.
The last issue to be considered concerns counsel fees and costs. Plaintiff requests that defendant be ordered to pay the fees of her attorney, her accountant and her appraiser. In support of her application plaintiff submits statements of fees due to Skoloff & Wolfe, Esqs. $12,317.50, to J.H. Cohn & Company, $6,589, and to Bertram R. Brown, $2,000.
*569 Plaintiff's attorney's client service record documents an expenditure of 119.7 hours. Defendant filed no response or objection as to fees and costs.
There can be no question that the award of counsel fees to be paid by any party to the matrimonial action is "within the broad limits of the trial court's discretion." Schlemm v. Schlemm, 31 N.J. 557, 585 (1960); In re J.S. & C., 142 N.J. Super. 499, 501 (App. Div. 1976); R. 4:42-9(a); R. 4:75.
Several factors deserve careful and realistic consideration when the court assesses reasonable counsel fees. Among these are the economic conditions of the parties, the complexity and difficulty of the issues determined, time spent in preparation of the case, the number of court appearances, pendente lite allowances and the standing and experience of counsel. See Salvatore v. Salvatore, 73 N.J. Super. 373, 382 (App. Div. 1962).
In addition to the above, when it is the wife who makes an application for counsel fees to be assessed against the husband the court looks to the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action. In Williams v. Williams, 59 N.J. 229, 233 (1971), it was stated that where those factors are met, "it is the policy of our law that counsel fees are properly the obligation of the husband and he should be compelled to furnish them to the wife."
The record amply demonstrates the comfortable standard of living enjoyed by the parties during the marriage and the wife's lack of earning power at present. An award of counsel fees which requires plaintiff to bear her own fees would only deplete the amounts available to her for necessities for herself and the children.
It is also clear that defendant is in a much better position to bear the costs of counsel and experts' fees. His business acumen and ability to earn have been set forth at length above. Further, there is no question of plaintiff's good faith in instituting and prosecuting her suit,
*570 Plaintiff's attorney is a highly respected member of the Bar of this State for many years. He is the author of the authoritative work on family law practice in New Jersey. Associate counsel are also well-known to the court and Bar for their expertise and experience. The court finds that the fees requested by plaintiff's counsel are reasonable.
Defendant is ordered to bear plaintiff's counsel fees. Fees for plaintiff's accountant and real estate appraiser are also assessed against defendant.
NOTES
[2] In the present case the court did not interview the infant children of the marriage. No evidence was adduced that either child preferred one parent over the other. The court is convinced that the parties have been careful to refrain from making the minds of the children their battleground. They have thus avoided creating the discord, mistrust and misery which forces a child to make a choice between his or her parents.