In the matter of the application of EDWARD SHAHEEN for the right of visitation to his infant child, Joan Stelling Shaheen.

[Submitted October term, 1939.   Decided February 5th, 1940.]

*Mr. Jacob Van Der Clock* and *Mr. M. Metz Cohn,* for the defendant-appellant.

*Mr. William V. Breslin,* for the petitioner-respondent.

The opinion of the court was delivered by

WOLFSKEIL, J.

The appeal in this case is from an order of the court of chancery upon advice of an advisory master, awarding cus-

tody of an infant child to its father, Edward Shaheen, and to Mr. and Mrs. William J. McCarthy, two unrelated strangers with whom the father proposed to live.

The proofs are meager, the hearing having been informal, without submission to a stenographic record, and the facts are elicited mainly from what is designated as a supplemental state of case, consisting of a summary of the evidence.

It appears that the couple, who lived with the wife's mother, separated after a series of quarrels. The child, a girl three years old, remained with her mother. Upon application to the court right of visitation for three days a week was given to the father, together with custody of the child one day each week. These privileges were subsequently amplified so as to include visitation on successive days, complete custody for one week, and the right of custody during any vacation period or leave of absence the husband might have, not exceeding a week's duration.

The wife refused to comply with the order, giving the child's illness as the reason for not allowing it out of her home. Though cited for contempt and warned by the advisory master that her failure to obey the order would result in placing the child in a foster home to insure obedience, she chose not to be disuaded from her expressed intention of continued antagonism. After apprisal of that situation, upon advice of the advisory master, the order was entered, from which appeal is now made, giving full custody to the father and the McCarthys.

There is no doubt as to the persistent obduracy of the wife. Some explanation, though not condonation, may be gleaned from the order relating to visitation and custody, which she so stubbornly resisted, for unquestionably it was burdensome, and one which was not calculated to advance the welfare of the infant.

Apparently the advisory master blended the contempt by the mother and the child's welfare into a single disposition, whereas it is manifest that the two subjects require separate determination according to the controlling elements that apply to each. Perhaps the wife's defiance of the court's order

merited some penalty, but punishment of her contumacy was a thing apart, and should not have struck through the child.

The mother is concededly a woman of good moral character and in every respect fit to have the custody of the child, and it is not argued in anywise that her disregard of the court's order detracts from this fitness. Though ordinarily both parents have parity of rights in matters of custody, the welfare of the child is the controlling factor. It is palpable that in this instance the natural and appropriate place for a girl of such tender years, inclined to sickness, is with the mother. To assign it instead to strangers, would plainly not be conducive to the child's best interest, welfare and happiness and was in defiance of the settled principles of equity.

The order of the court of chancery is accordingly reversed.

*For affirmance*—HETFIELD, WELLS, JJ. 2.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 12.