68 N.J. Super. 223 (1961)
172 A.2d 97
ANN LINN SCHWARTZ, NOW KNOWN AS ANN LINN ROBAK, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
BERNARD A. SCHWARTZ, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1961.
Decided June 21, 1961.
*226 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Robert Kleiner argued the cause for appellant and cross-respondent (Mr. Ervan F. Kushner, attorney).
Mr. J. Mortimer Rubenstein argued the cause for respondent and cross-appellant.
The opinion of the court was delivered by FOLEY, J.A.D.
The parties appeal and cross-appeal from a judgment entered in a matrimonial cause on November 20, 1959.
The judgment culminated a series of litigated post-marital disputes between the divorced parties relating mainly to the custody and support of their three sons, who at the time of the judgment were thirteen, twelve and nine years of age. The judgment provided: (1) plaintiff was adjudged to be guilty of contempt of court for interfering with defendant's visitation on September 28, 1956; sentence was deferred indefinitely and all other applications to have plaintiff held in contempt were deferred until further order; (2) custody of the three infant boys of the marriage was continued in the plaintiff, but defendant was given full custody of the children every weekend and every summer, in addition to every other holiday (an extension of right of visitation previously given); (3) support for the infant children was decreased from $50 a week per child to $35 a week per child as of January 1, 1959; (4) defendant was ordered to pay forthwith the sum of $5,065, representing accumulated arrearages due plaintiff for the support *227 of the children from September 1, 1956 to January 1, 1959; and (5) defendant was ordered to pay plaintiff or her former attorney a counsel fee of $750.
Plaintiff contends on her appeal that: (1) the proofs were insufficient to support a finding of contempt by the trial court, the contempt order is invalid because it was not entered until three years after the alleged contempt, the contempt order was blended with the disposition of the custody of the children and visitation rights, and the punishment should not have been deferred; (2) the order modifying defendant's visitorial rights was improvidently entered; (3) it was error to reduce the support for the infant children from $150 to $105 a week; and (4) the trial court erred in granting a counsel fee of only $750.
Defendant filed a cross-appeal from a portion of the final order and contends: (1) defendant should be granted custody of the infant children; (2) the support order should be reduced to $60 a week for the three infant children; (3) the order modifying the support payments should have been made retroactive to November 23, 1955, and not merely to January 1, 1959; and (4) it was error to grant plaintiff's attorney a counsel fee.
Our reading of the record convinces us that the trial court was justified in holding plaintiff in contempt. On September 27, 1956 defendant's attorney obtained an order to show cause, returnable on October 11, 1956, why the relief sought in defendant's petition should not be granted. That petition sought to hold plaintiff in contempt for her refusal to abide by an order of the court dated June 28, 1956 (dealing with partial custody), and requested that custody of the infant children be granted defendant, that the visitation rights in the judgment nisi be clarified and defendant granted additional visitation, and that plaintiff be enjoined from interfering with defendant's visitation rights. The order to show cause restrained and enjoined plaintiff from interfering with the visitation afforded defendant in accordance with the terms of the judgment nisi *228 entered February 4, 1955 and an order of partial custody entered on June 28, 1956. The petition and order were served on plaintiff at her home at about 11:00 A.M. on Friday, September 28, 1956.
Pursuant to the terms of the judgment nisi, defendant was entitled to visitation with the infant children from 5 P.M. Friday evening, September 28, 1956, until 5 P.M. Sunday evening, September 30, 1956. At about 5 P.M. on Friday, September 28, 1956, defendant called at plaintiff's home and waited outside for the children. Plaintiff came to the door and asked defendant if he had the weekly check for the support of the children Defendant gave plaintiff a check in the amount of $105. Plaintiff then informed defendant that since the check was $45 short (the judgment nisi provided that payments be $150 a week) he could not have the children. Thereupon, defendant called his attorney who, in turn, called the trial court. Defendant's attorney also called plaintiff's attorney who telephoned plaintiff and told her to immediately release the children. The children were released to defendant at about 7 P.M.
There can be no doubt that plaintiff willfully violated the judgment nisi and the restraint served upon her the very morning of the alleged contempt. The circumstances surrounding plaintiff's willful violation of the order may go to mitigate the punishment. However, they are sufficient to sustain the adjudication of contempt. The fact that defendant paid only $105 instead of $150, and the further fact that due to the intervention of the attorneys and the court the contempt was of only two hours duration, did not justify plaintiff's actions. It was for the court to punish defendant, assuming he, too, was in contempt for failing to pay $150 as required by the judgment nisi  not for plaintiff to deprive him of his visitation rights, and attempt to take the law in her own hands.
Ordinarily, the mother's violation of the provisions of the decree concerning visitation rights is not a defense to a charge of contempt based on a failure to pay child support. *229 Annotation, 172 A.L.R. 888 (1948). Likewise, it would seem rational that a father's violation of a support order is not a defense to a contempt based on failure to abide by a decree determining visitation rights. In addition, it is generally held that ignorance of the law is not a defense in a contempt proceeding, although it may be considered in mitigation. 12 Am. Jur., § 72, p. 438 (1938). It has also been held that even if the contemner was acting on advice of counsel, this is not a defense but only a fact to be considered in mitigation of the offense or punishment. State ex rel. Porter v. First Judicial Dist., 123 Mont. 447, 215 P.2d 279 (Sup. Ct. 1950).
Plaintiff also asserts that the contempt conviction is invalid because it occurred three years after the facts supporting it and that this period is far too long to establish the contempt, especially since the delay was not due to plaintiff's fault. Plaintiff cites Suydam v. Suydam, 5 N.J. Super. 359 (App. Div. 1949), in support of this proposition. In that case the husband violated a decree which provided alimony for his wife at $50 a week. In February 1939 the husband ceased weekly payments and contempt proceedings were commenced against him. He countered with a proceeding to reduce the alimony payments. The matters were referred to a master, who filed his report in August 1939. The husband filed exceptions to the master's report and late in 1939 argument was had before an advisory master, and briefs filed. Eight years elapsed before the advisory master entered an order on September 23, 1947 reducing the weekly payments of alimony to $10 a week. We concluded with respect to the judgment holding appellant in contempt of court:
"* * * Under the peculiar circumstances of this case, not the least of which was the unexplained delay of eight years between the hearing and decision on the exceptions to the Master's report  a delay in no way attributable to appellant  it would seem but fair to relieve appellant from the status of a contemnor." (5 N.J. Super., at p. 362.) *230 Clearly, Suydam is distinguishable. The delay in the case sub judice was not due to the court's laches. Plaintiff does not claim any prejudice because of the delay. The mere fact that three years have elapsed since the act of contempt does not invalidate the conviction.
Plaintiff argues that the trial court had no right to interfere with the welfare of the children by intertwining the punishment for contempt with the unjustifiable increase in the rights of visitation of the husband. In support of this contention In re Shaheen, 127 N.J. Eq. 75 (E. & A. 1940), is cited. There the wife refused to comply with an order dealing with partial custody and visitation rights. She was cited for contempt and warned that failure to obey the order would result in placing the child in a foster home to insure obedience. Nevertheless, she continued her obstinate conduct. Thereupon, an order was entered giving full custody of the child to the father and two unrelated strangers with whom the father proposed to live. The court stated:
"Apparently the advisory master blended the contempt by the mother and the child's welfare into a single disposition, whereas it is manifest that the two subjects require separate determination according to the controlling elements that apply to each. Perhaps the wife's defiance of the court's order merited some penalty, but punishment of her contumacy was a thing apart, and should not have struck through the child." (127 N.J. Eq., at pp. 76-77.)
And the court further noted:
"* * * It is palpable that in this instance the natural and appropriate place for a girl of such tender years, inclined to sickness, is with the mother. To assign it instead to strangers, would plainly not be conducive to the child's best interest, welfare and happiness and was in defiance of the settled principles of equity." (127 N.J. Eq., at p. 77.)
In re Shaheen, supra, is clearly distinguishable. There is no basis in the record from which an inference can be drawn that the trial court blended the contempt by the mother and the children's welfare into a single disposition. *231 Merely because the contempt and increased visitation rights are contained in the same order, does not create an inference of such a blending. The entire record indicates that the trial court was primarily concerned with the welfare of the infant children. There was sufficient evidence to indicate that increased visitation rights for the father would enhance the welfare of the infant children. Moreover, there was no threat that failure to obey the trial court's orders would result in increased visitation rights for the father.
Finally, even if the increased visitation rights were intended as punishment for plaintiff's contempt, this would not invalidate her conviction for contempt. At most, the punishment would be improper  not the conviction. But it is clear from the order under review that plaintiff's punishment was deferred. And even if the increased visitation rights could be considered as clandestine punishment, plaintiff's remedy would be to apply for the vacation or modification of these rights, rather than to seek a determination that the contempt conviction was invalid.
Plaintiff argues that the trial court erroneously deferred sentencing plaintiff for her contempt. As in O'Rourke v. Cleveland, 49 N.J. Eq. 577 (E. & A. 1892), "the defendant was left in suspense as to whether any further punishment was to be inflicted, and he was decreed to hold himself in readiness to appear, upon order, for such order and sentence as might seem meet to the court." 49 N.J. Eq., at page 580. Although O'Rourke is distinguishable factually, the above language points up the vice of deferring sentence on a contempt adjudication. See also In re Hayden, 101 N.J. Eq. 361, 368 (Ch. 1927), to the effect that O'Rourke dealt exclusively with a "criminal contempt."
In Lathrop v. Lathrop, 50 N.J. Super. 525, 536 (App. Div. 1958), we noted that:
"* * * in a civil contempt the proceeding is essentially remedial. It is a step in the cause, and its object is to coerce one party for the benefit of another party to do or refrain from doing some act specified in the order of the court." *232 For a discussion of contempt generally see N.J. Dept. of Health v. Roselle, 34 N.J. 331 (1961).
In the instant case, there is no nexus between deferring sentence and obedience to the court's order respecting visitation and custody. Future sentencing is not conditioned upon obedience to any order of the court. Consequently, plaintiff has been kept in a constant state of suspense. She may at any time be called in for sentencing on the contempt charge, regardless of how rigidly she complies with the court's order regarding visitation and custody. An ominous cloud hangs constantly over her. There is no way in which she can purge herself of this threat of punishment  strict compliance with the court's order is of no aid. Deferring sentence in such circumstances is oppressive and unjust.
We are, therefore, of the opinion that the trial court should promptly bring the contempt matter to a conclusion by making such disposition of it as present circumstances indicate will best serve to prevent repetition of plaintiff's contumacious conduct.
With respect to the provisions of the judgment relating to the enlargement of the visitation rights and the reduction in support payments, we think the evidence amply supports the judicial action taken. These are matters which are peculiarly within the domain of the trial court. Where, as here, intimate knowledge of the circumstances and condictions in which the parties and the children live has been gained by the judge through perennial contact with the case, we should not substitute our judgment for his, except for compelling reasons. No such reasons appear.
As noted, on the cross-appeal defendant contends that the court erred in not granting him custody of his three sons. In Sheehan v. Sheehan, 51 N.J. Super. 276, 290 (App. Div. 1958), certification denied 28 N.J. 147 (1958), we fully discussed the factors to be considered where it is contended that custody has been erroneously awarded. We there noted that a resolution of such a contention requires consideration of two problems: (1) the *233 fitness of the plaintiff, and (2) the welfare of the minor children. Neither parent has the greater right to the custody of a child. R.S. 9:2-4, as amended L. 1948, c. 321, § 4, p. 1296; ibid., 51 N.J. Super., at p. 290, and cases there cited. The law, however, favors the mother as custodian of children of tender years. The rationale is that the mother will take better and more expert care of such a child than the father. Ibid., 51 N.J. Super., at pp. 290-291, and cases there cited. The pivotal factor and paramount consideration, in matters involving custody of minor children, are the happiness and welfare of such children. This has been construed as meaning the "safety, happiness, physical, mental and moral welfare of the child." Ibid., 51 N.J. Super., at p. 291, and cases there cited. The court will look at the "character, condition, habits and other surroundings" of the parents in considering their fitness and the welfare of the children. Ibid., 51 N.J. Super., at p. 291, and cases there cited.
Here again respect must be paid to the judgment of the trial judge as to what is best for the children, particularly where he has virtually lived with the case and, to some extent we are sure, has suffered with them the vicissitudes of this unhappy litigation. We are certain that the judge placed in the balance the many factors which led him to conclude that, for the present at least, custody should remain in the mother with an increase in the father's visitation rights. We will not interfere.
Likewise, we conclude that the allowance of $105 per week for the support of the three boys represents an award which is consistent with defendant's income, and that the award of $750 as a counsel fee represented a fair exercise of judicial discretion.
Finally, we are satisfied that the requirement that defendant pay arrearages in support which accrued between September 1956 and January 1959 amounting to $5,065 was proper. However, we think that a trust should be impressed on this fund by the trial court, and direct that *234 the court, after consultation with the attorneys for the parties, enter an order which will preserve this fund in such manner as will best serve the interests of the children.
The applications for the assessment of printing costs are denied.
Remanded for proceedings consistent with this opinion and entry of judgment thereon. No costs.