**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4086-16T1

S.A.,

    Plaintiff-Respondent,

v.

M.W.,

    Defendant-Appellant.

_____

Submitted June 4, 2018 — Decided July 31, 2018

Before Judges Whipple and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1444-17.

Samardin, LLC, attorneys for appellant (Yeugenia K. Samardin, on the briefs).

Howard Masia, attorney for respondent.

PER CURIAM

Defendant appeals from an April 11, 2017 Final Restraining Order (FRO) of the Family Part. After reviewing the record we reverse and remand the court's findings regarding predicate acts of harassment under N.J.S.A. 2C:33-4 (b) and (c), as well as

terroristic threats, N.J.S.A. 2C:12-3(a). However, we affirm the entry of restraints based on the finding of the predicate act of harassment under N.J.S.A. 2C:33-4 (a) and remand for clarification of the order regarding the prohibition of weapons.

We discern the following essential facts. Plaintiff S.A. and defendant M.W. were married in 2013. In 2014, their daughter, S.W., was born. The couple lived in North Carolina until June 11, 2016, when they separated. Eventually, defendant relocated to Florida, pursuant to his obligations as an active duty member of the United States Army, and plaintiff moved to New Jersey with S.W. to live with family members.

On October 14, 2016, a judge in North Carolina entered an order on defendant's application addressing temporary custody of S.W. and prohibiting dissipation of marital assets. The order established joint legal custody and gave primary physical custody of S.W. to plaintiff and gave defendant secondary physical custody with phased-in visitation.

The order set forth in specific detail how the terms of defendant's visitation would be phased-in to allow for increased unsupervised time with his daughter. First, defendant was to have one day of supervised visitation at a "child-friendly location"

from 10:00 a.m. until 2:00 p.m.[1]  After this, upon fourteen days written notice, defendant was to have unsupervised visitation in New Jersey for two weekends, from 10:00 a.m. to 6:00 p.m. on both days.

If defendant exercised the visitation described above, and upon another fourteen days written notice, defendant then would have unsupervised visitation in New Jersey for two weekends, from Friday at 6:00 p.m. through Sunday at 6:00 p.m.  The phased-in schedule contemplated longer visits encompassing a holiday schedule.

Furthermore, defendant was to have Facetime/Skype/Webcam visitation on Tuesdays, Thursdays, and Sundays at 6:00 p.m. Defendant and plaintiff had to provide each other with current addresses and phone numbers to ensure compliance with the above provisions.

Plaintiff moved to New Jersey around November 2016, and did not inform defendant or provide him with a current address.  She provided him with a P.O. Box number instead.  Plaintiff received a text message from defendant in late January 2017 telling her he planned on coming to New Jersey during the first week of February

---

[1]  The record demonstrates that defendant exercised this day of visitation in September 2016, thus completing the first stage of the phased-in visitation.

to visit S.W. Plaintiff took off the Saturday and Sunday from work, however, defendant did not appear. He later told her he was coming up the second week of February. Plaintiff responded she would be with S.W. at the Freehold Mall at 10:00 a.m. on Saturday, February 18th.

When defendant met plaintiff and S.W. at the mall, plaintiff asserted S.W. was "scared and startled" but calmed down due to her presence. Plaintiff insisted on being present for the entire visit, alleging S.W. started crying when she saw defendant and because defendant mentioned taking S.W. out of state to the Philadelphia Zoo. Defendant visited with S.W. from 10:00am to 3:00 p.m. at the mall. Plaintiff asserts at the end of the visit defendant said he was going to take revenge on her and her family because of her cooperation in a criminal investigation conducted by the U.S. Army.

At the end of visit, defendant told her he wanted to visit S.W. the following day, but plaintiff said no. The following day, February 19, 2017, defendant sent the police to plaintiff's residence, telling the police "he had time scheduled with [S.W.], that [he] was supposed to meet her but she never came so [he] want[ed] to make sure that she's ok." On February 23, 2017 defendant posted on Facebook, "Nothing is ever forgotten, nothing

A-4086-16T1

is ever forgiven.  Everything will be remembered, everything will be avenged."

That same day, plaintiff secured a temporary restraining order against defendant alleging harassment and terroristic threats.  On April 11, 2017, the parties appeared with counsel for the hearing on the FRO.

In addition to the facts recounted above, plaintiff testified that in 2015, while living together in North Carolina, she and defendant fought about money and about his infidelity, and "[h]e pushed me towards the back against the wall.  It was a very hard push, very, very hard push and he cursed me, screaming in a loud voice."  He pushed her with an open hand, hitting her on her left shoulder, but "would close his fist and scare [her] as if he's going to hit [her] with a closed fist."  Plaintiff asserted that in 2014, "he was drunk but he stopped hitting me because I threatened him that I'm going to call 9-1-1 . . . ."

After the close of plaintiff's testimony, defendant moved for summary judgment, which the judge converted to a motion for involuntary dismissal and denied, finding plaintiff established a prima facie case for terroristic threats and harassment.

Thereafter, defendant testified.  He was in the Army for ten years, holding the rank of sergeant, and was assigned to a command

center in Florida. He had no negative marks from the military, and no criminal background.

He testified there was a hearing scheduled in North Carolina on February 5, 2017 in the pending custody matter, and he had planned to drive up to New Jersey following that hearing to visit S.W. However, the hearing was canceled, and he had to change his leave from work, and informed plaintiff he would be visiting the second week of February instead.

Further, he contacted plaintiff to ask her for a current address because his child support checks were returned as undeliverable. In addition to asking for this address, he contacted the local police to confirm the address she had previously given him. He ultimately obtained her new address through his attorney and plaintiff's attorney, and traveled to New Jersey.

When defendant arrived at the mall on Saturday, February 18, he went to the children's area in the food court. When plaintiff and S.W. arrived, plaintiff would not allow him leave the mall with their daughter. He had considered taking S.W. to the Philadelphia Zoo, but had not made firm plans. During his visitation, defendant and his daughter enjoyed time together at the mall but by 3:00 p.m., S.W. was falling asleep so he ended the visit.

While he was upset he was not going to have visitation with S.W. on Sunday, defendant denied telling plaintiff he was "going to get revenge on her." He testified he returned to his lodgings, and was advised by his attorney to call the police to check the validity of her address. After doing this, on February 19, a police officer went to the address she provided through her lawyer and confirmed it was a post office box address, not a residence. Defendant told the police he wanted to know where his daughter was, and intended to file an incident report of a violation of a court order since his wife was not abiding by the North Carolina custody order. The Old Bridge police report stated that his "wife was supposed to be dropping off [his] child for visitation".

Defendant denied ever pushing or hitting plaintiff, and denied any other domestic violence alleged in the past. He also denied the existence of any active investigations by the Army about him.

The Family Part judge issued detailed and thorough findings from the bench at the conclusion of the hearing. Before making findings in support of the FRO, the judge chastised plaintiff for not complying with the North Carolina visitation order stating,

> to the extent that plaintiff is not cooperating with [the custody] order, defendant has some remedies available to him. . . . If plaintiff is doing that, interfering with the parenting time, it's wrong. It . .

A-4086-16T1

. should not happen but I'm here today only for a domestic violence matter and I'm constrained with regard to what my responsibilities are with handling domestic violence cases.

The judge addressed the parties' credibility, finding plaintiff "mostly credible," and "overall, because of [her] body language and the eye contact and the manner in which she answered the questions." He found her credible and believable on the central issues of the case. Turning to defendant, the judge stated,

> I don't find [defendant] . . . misrepresented anything. I don't find that his . . . credibility was bad. I found his eye contact to be good, as well but I didn't find his overall story plausible. I didn't find his overall defense plausible, through no fault of [c]ounsel. I just didn't find defendant's case as credible as the plaintiff.

Relying on Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the judge considered the two-prong test to determine whether an FRO is appropriate. The judge found defendant threatened plaintiff by saying he was going to take revenge on her and her family because of her lack of cooperation regarding visitation, and the breakdown of their relationship requiring the North Carolina custody order. The judge found defendant's conduct violated the harassment statute, N.J.S.A. 2C:33-4(a), (b), and (c). Furthermore, the judge found defendant violated N.J.S.A.

8

2C:12-3(a), terroristic threats, because he threatened to commit a crime of violence with the purpose to terrorize plaintiff. The judge found plaintiff's report of prior history of alleged abuse credible and determined the predicate acts required under Silver were present.

The judge determined even though defendant lived in a different state, the existence of the couple's then three-year-old daughter meant, "the parties are going to have to interact over the next many, many years with regard to their daughter, so they're going to continuously see each other, or at least would come into contact." Considering defendant's Facebook post, the judge found it showed "a state of mind . . . that presents an angry person." Even though the couple were not Facebook friends, the judge thought it likely "the post would find its way into the hands of the plaintiff four days later."

As a result, the judge found good cause to believe plaintiff "is afraid for her health and well-being". After setting forth the conditions and restrictions, defendant's counsel questioned whether it was necessary to impose restrictions on his ownership of firearms, due to his military employment. Defendant owns one personal firearm, a semi-automatic rifle, which was kept in his home in Florida. His Army-issued handgun was not kept in his personal home, but in the armory on the base.

A-4086-16T1

The judge thereafter made findings under State v. Johnson, 352 N.J. Super. 15, 20 (App. Div. 2002), which directs a judge seeking to issue a search warrant under N.J.S.A. 2C:25-28(j) to find "there exists reasonable cause[2] to believe that, (1) the defendant has committed an act of domestic violence, (2) the defendant possesses or has access to a firearm or other weapon . . . , and (3) the defendant's possession or access to the weapon poses a heightened risk of injury to the victim."

After making requisite findings, the judge found defendant's ownership of the rifle did not pose a heightened or increased risk of danger to plaintiff. He found defendant was credible when testifying that his only weapon was the rifle, the threats made to plaintiff did not involve the use of the weapon, and the weapon is in Florida, and declined to issue a warrant in Florida for that weapon.

The judge issued the FRO setting forth the restrictions on defendant. He was prohibited from future domestic violence, and contacting plaintiff or causing anyone else to harass plaintiff. The FRO ordered visitation to proceed as set forth in the North Carolina custody order. Defendant was ordered to text plaintiff's

---

[2] Pursuant to the New Jersey Supreme Court's decision in State v. Dispoto, 189 N.J. 108, 121 n. 3 (2007), the standard for each step is probable cause, not reasonable cause.

sister to arrange visitations with S.W., with pickups and drop offs to occur at the police station.

He was also prohibited from possessing any and all firearms or weapons, and was ordered to surrender any firearms or weapons, including permits to carry or firearms purchaser ID cards. The order makes no distinction between weapons owned or possessed in New Jersey and those owned or possessed in Florida. However, the section of the order allowing law enforcement to search for and seize any weapons or permits was blank. This appeal followed.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Due to "the special jurisdiction and expertise of the family court," we defer to factual determinations made by the trial court as long as they are "supported by adequate, substantial, and credible evidence in the record." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Cesare, 154 N.J. at 413). We will not disturb the fact-findings of the trial judge unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interest of justice." Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 151 (App. Div. 2003) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions

of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, 154 N.J. at 412). Absent compelling circumstances, we may not substitute our judgment for that of the trial court, which has become familiar with the case. Schwartz v. Schwartz, 68 N.J. Super. 223, 232 (App. Div. 1961). Our Supreme Court has observed Family Part judges "have been specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples, and . . . have recognized that their findings are entitled to deference." J.D. v. M.D.F., 207 N.J. 458, 482 (2011) (citation omitted).

Defendant argues the record does not support the judge's findings the required predicate acts of harassment and terroristic threats were committed. We agree in part.

Under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) a FRO may be issued pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, when two findings are made. The first prong requires the judge determine "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Under N.J.S.A. 2C:25-19(a), domestic violence includes the occurrence of seventeen different criminal acts, including harassment and terroristic threats. The judge found defendant

committed both of these offenses, thus satisfying the requirement of a predicate act of domestic violence.

Defendant argues the record does not support findings under any section of the harassment statute. A person commits the act of harassment when he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

To support a finding under subsection (a), "there need only be proof of a single such communication, as long as defendant's purpose in making it, or causing it to be made by another, was to harass and as long as it was made in a manner likely to cause annoyance or alarm to the intended recipient." J.D., 207 N.J. at 477. Our Supreme Court had stated that "[a] finding of a purpose to harass may be inferred from the evidence presented," and that "[c]ommon sense and experience may inform that determination." Ibid. (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)).

Lastly, the statute defines the violation in terms of annoyance or alarm, and our Supreme Court has held that for purposes of subsection (a), "[a]nnoyance means to disturb, irritate, or bother." Ibid. (quoting Hoffman, 149 N.J. at 580).

The judge found, by the preponderance of the evidence, because defendant was angry about plaintiff's lack of cooperation with the custody order and alleged cooperation with the Army investigation, he intentionally made the required communication with the intent to cause annoyance or alarm, in the form of a statement to plaintiff he was going to take revenge on her and her family. Further, the judge found, and the record supports this finding, that the statement was likely to cause annoyance or alarm because plaintiff was disturbed, irritated, or bothered by the communication with defendant, and was afraid for her health and well-being. The findings of the court adequately establish the elements of harassment under N.J.S.A. 2C:33-4(a).

We agree with defendant the record does not support a finding under subsection (b) of the harassment statute, which questions whether the accused subjected the alleged victim to "striking, kicking, shoving, or other offensive touching, or threaten[ed] to do so." N.J.S.A. 2C:33-4(b). The judge found even though defendant did not touch plaintiff, his threats or threatening behavior established the elements of section (b). However,

14                                                      A-4086-16T1

defendant's statement threatening to seek revenge on plaintiff and her family is insufficient to support a finding defendant threatened to use physical violence. Furthermore, we also agree the judge's finding under subsection (c) lacks factual underpinnings in the record. That section asks whether the accused engaged "in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). The determination of what constitutes an alarming course of conduct "must be made on a case-by-case basis." Hoffman, 149 N.J. at 581. The judge's oral decision does not specify the basis for the finding under subsection (c).

However, the statute, which uses the disjunctive "or", does not require all three subsections be satisfied before harassment can be found. As such, the vagaries in the judge's findings under subsection (b) and (c) do not alter the outcome because the findings under subsections (a) are fully supported by the record.

We also agree the record does not support the court's finding of the predicate act of terroristic threats. A person engages in terroristic threats when he or she "threatens to commit any crime of violence with the purpose to terrorize another . . ., or in reckless disregard of the risk of causing such terror or inconvenience." N.J.S.A. 2C:12-3(a).

15

"In the domestic violence context, an act of terroristic threats requires that (1) the abuser threatened the victim; (2) the abuser intended to threaten the victim; and (3) 'a reasonable person would have believed the threat.'" Dispoto, 189 N.J. at 121-22 (quoting Cesare, 154 N.J. at 402). Under the objective standard utilized in these cases, though "courts should not consider the victim's actual fear, courts must still consider a plaintiff's individual circumstances and background in determining whether a reasonable person in that situation would have believed the defendant's threat." Cesare, 154 N.J. at 403 (citation omitted).

As previously stated, the judge made specific findings after hearing testimony that defendant made a threatening statement, he intended to make the threatening statement, and made the statement with the purpose of scaring plaintiff. However, these findings do not identify what, if any, crime of violence was embodied in the threatening statements. See State v. McIlwraith, 344 N.J. Super. 544 (App. Div. 2001) (finding that in the context of a jury charge on the crime of terroristic threats, "the elements and definition of any such crimes [of violence] must be adequately explained to the jury, so that the jury is not left to speculate as to the crimes that might be supported by the evidence.") As such, the record does not support the judge's finding that

16

defendant had committed the predicate offense of terroristic threats. We therefore remand for the issuance of an amended FRO reflecting the correct predicate offenses committed by defendant.

Lastly, we note the FRO is inconsistent with the judge's findings because it prohibits defendant from possessing weapons or permits to carry weapons. After making findings under <u>State v. Johnson</u>, 352 N.J. Super. 15, 20 (App. Div. 2002), the judge found defendant's ownership of the rifle, which was kept at all times in Florida, and was not involved in the incidents involving plaintiff, did not pose a heightened or increased risk of danger to her, and as a result, declined to "issue a warrant in Florida for that weapon." Thus, the court's apparent intention was to permit defendant to retain his gun. Despite this, the FRO issued on that same day does not mirror this intention; at the very least, it reflects a marked ambiguity. We therefore also remand for an amended FRO making clear the status of defendant's gun ownership rights.

All additional arguments introduced by defendant are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part for the issuance of an amended FRO consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4086-16T1