**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0802-18T1

J.D.,

    Plaintiff-Appellant,

v.

G.W.,

    Defendant-Respondent.

_____

Submitted January 23, 2020 – Decided March 2, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FD-12-1656-14.

J.D., appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this non-dissolution matter, plaintiff mother appeals from a September 5, 2018 Family Part order, denying her motion to suspend defendant father's

parenting time and for sole legal custody of their five-year-old daughter, C.D.[1]
We affirm.

The parties share joint legal custody, with plaintiff designated as the residential parent of C.D., a child with reported "medical challenges." The parties engaged in extensive motion practice primarily propelled by accusations that, given her medical issues, defendant did not properly care for C.D. during his parenting time. As a result, by court order, defendant was afforded supervised parenting time only pending his completion of training to appropriately care for C.D.

Subsequently, at a February 14, 2018 hearing on plaintiff's Order to Show Cause (OTSC), defendant provided proof that he completed training at Raritan Bay Medical Center on August 10, 2016. After considering defendant's submission and reviewing a report of the 2017 supervised visits, during which the supervisor reported no concerns regarding defendant's interaction with C.D. and documented plaintiff's repeated failure to appear with C.D.,[2] the judge

---

[1] We use initials in order to protect the privacy of the parties and their child.

[2] In responding to plaintiff's claim that her absences were attributable to C.D.'s illness, the judge noted that "it was striking . . . that the child was consistently sick on Saturdays" when defendant's supervised visits were scheduled. The judge pointed out that there was a "history" of plaintiff impeding defendant's parenting time that would not be "tolerate[d]."

2

entered an order affording defendant unsupervised parenting time "every Saturday from [10:00 a.m. to 2:00 p.m.]," effective February 17, 2018, to be "expand[ed] to [10:00 a.m. to 6:00 p.m.]," effective March 10, 2018. Given the acrimony between the parties, the judge ordered that the exchanges were to take place at the New Brunswick Police Department.

Thereafter, on August 29, 2018, plaintiff filed another OTSC to suspend defendant's parenting time and grant her sole legal custody of C.D. based on allegations that, during his parenting time, defendant had been "spanking[]" C.D., putting "tight little cornrows" in her hair that "pull[] her scalp" and "hurt[] her," removing her clothes and "examin[ing] her body," and feeding her only "McDonalds." In support, plaintiff provided a New Brunswick police report documenting a child custody dispute that occurred during the August 25, 2018 visitation exchange, during which plaintiff made these allegations to the reporting officer in the presence of defendant and C.D.

According to the report, when defendant asked C.D. in the officer's presence whether he hit her, C.D. "looked up at [defendant] and nodded her head up and down saying 'yes.'" The report also indicated that plaintiff returned to the police station three days later and asked the officer to "add" to the report that defendant reacted to C.D.'s admission that he hit her by "extend[ing] his arms

A-0802-18T1

like he wanted to choke [C.D.]" out of anger. However, the officer reported instead that while defendant "appeared angry," he did not "recall . . . [defendant] extend[ing] his arms as if he wanted to choke his daughter." The report noted further that the officer reported the allegations to the Division of Child Protection and Permanency (DCPP) and "advised [plaintiff] to follow up with her DCPP case worker and the judge overseeing the visitation process."

At the September 5, 2018 hearing on plaintiff's OTSC, in addition to the police report, the judge considered an August 29, 2018 update from DCPP, indicating that the investigation into plaintiff's allegations against defendant were still pending, but that the case would be submitted for closure shortly. Addressing the judge, plaintiff changed her position from seeking suspension of defendant's parenting time to "want[ing] him . . . supervised" during his visitation with C.D. In response, defendant submitted two letters, dated August 30 and September 3, 2018, denying any wrongdoing, including spanking or hitting C.D. in any way, and delineating how plaintiff has continuously attempted to thwart his parenting time.

As an example, according to defendant, plaintiff "lied to [the police], stating [he] had weapons in [his] house, which resulted in multiple police cars coming to [his] house, searching [his] house, as well as [his] father's apartment."

A-0802-18T1

Additionally, plaintiff "lied to the [c]ourt when she did not want to cooperate in the transportation for [C.D.'s] visitation" by stating "she did not have a vehicle" when defendant "witnessed her drive up in her car each time [he] would come to [c]ourt." Further, plaintiff "lied to the [c]ourt, stating [defendant] stood on the courthouse steps and threatened her [and C.D.'s lives,]" when "[t]he courthouse cameras . . . show[ed] . . . no interaction" between them. Notably, at the hearing, defendant also testified that during the DCPP investigation, when C.D. was interviewed by the DCPP workers about plaintiff's allegations, she denied being spanked by defendant. Defendant stated further that C.D. told one of his friends "mommy lied on daddy."

Finding plaintiff "failed to demonstrate a substantial change in circumstances," the judge denied "[p]laintiff's request to suspend defendant's parenting time and for sole legal custody . . . without prejudice" pending the completion of DCPP's investigation. The judge explained that if DCPP substantiated the allegations, that could result in "a modification" or "a suspension of [defendant's] parenting time." Considering C.D.'s "best interest, . . . safety, [and] . . . welfare," the judge stressed that he "[did] not trivialize [the allegations]."

However,

A-0802-18T1

[t]he [c]ourt also weighs those against the he said, she said, where the plaintiff is finger pointing at the defendant, the defendant denying it, and finger pointing at the plaintiff, for essentially, contriving these allegations. The [c]ourt is not in a position to determine who is telling the truth or not. DCPP is obviously in a far better position, because they're on the ground, so to speak. They're investigating, doing interviews, and what have you.

The judge further noted that if there was "evidence suggesting . . . , as [defendant] alleges, that this is another example of plaintiff's attempt to interfere with parenting time, then the [c]ourt has recourse under [Rule] 5:3-7, which could include a transfer of custody." In that regard, the judge pointed out that "[i]n the two years that [he had] been responsible for [the] case, [plaintiff had] thrown every roadblock known to mankind in front of [defendant's] ability" to exercise his parenting time. The judge also indicated that the conflicting account plaintiff provided to the DCPP worker when she stated that "[defendant] choked [C.D.] in front of" the responding police officer during the August 25, 2018 "custody exchange at the New Brunswick Police Department"[3] was emblematic of "the lies[] and . . . schemes concocted by . . . plaintiff," during the course of

---

[3] When confronted with the conflicting statement by the judge, plaintiff retorted the DCPP worker "wrote it wrong."

A-0802-18T1

the proceedings, "mak[ing] . . . her allegations . . . difficult to assess." The judge entered a memorializing order and this appeal followed.

On appeal, plaintiff argues the judge erred "as a matter of law" by "disregarding key facts that in their totality[,] demonstrate the changed circumstances that affect the child's welfare." Plaintiff also argues the judge deprived her of "due process" by his "extreme bias against [her]" as reflected in the "judge's venomous statements." We disagree.

In any custody or parenting time dispute, "it is well settled that the court's primary consideration is the best interests of the child[]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). Thus, a parent seeking to modify a parenting time schedule "bear[s] the threshold burden of showing changed circumstances which would affect the welfare of the child[]." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div. 1958)). See also Lepis v. Lepis, 83 N.J. 139, 157 (1980).

To determine whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current order was entered. Sheehan, 51 N.J. Super. at 287-88. Then, the court can "ascertain what motivated the original judgment and determine whether there has been any

7

change in circumstances." Id. at 288. Once the moving party makes a prima facie showing of changed circumstances, only then is the moving party entitled to "a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing . . . order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009).

In general, because the Family Part has special expertise in family matters and the opportunity to observe witnesses first-hand, we defer to factual determinations made by the trial court as long as they are "supported by adequate, substantial, and credible evidence in the record." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, we review the Family Part's interpretation of the law de novo. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). Notably, a decision concerning custody and parenting time rest in "the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995). See Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 157 (App. Div. 2003) ("Judges of the Family Part are regularly called upon to make exceedingly difficult and delicate decisions as to the best interest of

children, and we are obliged to give deference to both their findings and the exercise of their sound discretion.").

Here, we find no error in the judge's determination, and we discern no abuse of discretion. Pending the completion of DCPP's investigation, plaintiff's allegations were supported only by her own account, and, given her past false accusations against defendant and attempts to deprive him of parenting time, the judge did not find her to be credible. "Where, as here, intimate knowledge of the circumstances . . . has been gained by the judge through perennial contact with the case, we should not substitute our judgment for his, except for compelling reasons." Schwartz v. Schwartz, 68 N.J. Super. 223, 232 (App. Div. 1961). Here, no such reasons appear. Because plaintiff did not meet the changed circumstances threshold, the judge was not obliged to hold a best-interests plenary hearing on the OTSC. However, because the application was denied without prejudice, plaintiff is not precluded from refiling the application, supported by corroborating evidence.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9                                                                    A-0802-18T1