**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5433-17T3

KEITH REPACK,

      Plaintiff-Respondent,

v.

SHANNON KEAVY,

      Defendant-Appellant.

_____

        Submitted September 10, 2019 – Decided August 10, 2020

        Before Judges Messano and Ostrer.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FD-13-0333-12.

        Brian P. Latimer, attorney for appellant.

        Ansell Grimm & Aaron PC, attorneys for respondent (Donna L. Maul, of counsel and on the brief).

PER CURIAM

    This child custody and child naming dispute returns to us after our remand. See Repack v. Keavy, No. A-5537-13 (June 9, 2015). We assume the

reader's familiarity with our prior decision. In brief, we held the court erred in establishing joint legal and residential custody without first holding a plenary hearing, which we directed the trial court to conduct. Regarding the parties' dispute over their child's surname, we remanded for the trial court to conduct a best-interests-of-the-child analysis. Consistent with Gubernat v. Deremer, 140 N.J. 120 (1995), we directed the court to presume the name selected by defendant-mother, as the primary custodial parent, served the child's best interests.

After an extensive hearing consuming multiple trial days, the trial court issued a comprehensive written opinion resolving these issues. In contrast to its prior order granting equal residential custody, the trial court determined that the child should reside mainly with her mother during the school year, and with her father during summer breaks, with significant opportunities for parenting time for the other parent during those periods. That resulted, roughly, in a four-sevenths to three-sevenths split of parenting time. However, the judge ordered that plaintiff assume responsibility for meeting the child's regular medical and dental needs. The court also ordered that the parties' daughter bear the surname "Keavy-Repack."

2

Defendant contends: the court should have designated her the parent of primary residence, consistent with her exercising more overnights than plaintiff; the allocation of health care authority violated her rights as the parent of primary residence; the court abused its discretion in reducing defendant's summer vacation time from two weeks to one; the evidence did not support the court's naming decision; and the court erred in relying on the report of a testifying expert which was not entered into evidence. Defendant also alleges the trial judge displayed bias, and the case should be remanded for a new hearing before a different judge.

Having reviewed the record in light of the applicable principles of law, we affirm in part and modify in part.

I.

We apply a deferential standard of review to the Family Part's factual findings. They are binding if supported by "adequate, substantial, credible evidence," and we will disturb them only if they are so inconsistent with the trial record "'as to offend the interests of justice.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974)). This limited scope of review is especially appropriate in light of the

Family Part's expertise, and its opportunity to assess parties' credibility based on live testimony. Ibid.

Decisions regarding the appropriate arrangement to resolve a custody dispute is left "to the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995). A trial judge's child custody determinations are "entitled to great weight and will not be lightly disturbed on appeal." DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976). The trial court's discretionary decisions — reflecting "conscientious judgment" and accounting for "the particular circumstances of the case" — are binding unless they lack "rational explanation, inexplicably depart[] from established policies, or rest[] on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (first quoting Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007); then quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). Absent compelling circumstances, we are not free to substitute our judgment for that of the trial court, which has become familiar with the case. Schwartz v. Schwartz, 68 N.J. Super. 223, 232 (App. Div. 1961). Nonetheless, we owe no special deference to the trial court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-5433-17T3

## II.

We turn first to defendant's contentions regarding custody and parenting time. The court endeavored to fashion a parenting time arrangement that came as close as possible to constitute an equal allocation of time. However, in the final analysis, plaintiff was awarded roughly three-sevenths of overnights. Mindful of the forty-to-sixty-minute drive-time separating the parties, and the fact that the child had already become accustomed to attending school near defendant, the court determined that it served the child's best interests to reside with defendant each night before a school day, with one exception. As plaintiff would exercise parenting time three weekends a month during the school year (or four weekends in months with five weekends), the child would stay with plaintiff on the night before the school day during those weekends. Also, the child would spend the summer break with plaintiff, except for two weekends per month, and a summer vacation.

Defendant challenges the court's order granting plaintiff primary responsibility "for [the child's] regular medical and dental needs" and exclusive authority to select all medical providers, while requiring him to notify defendant of any appointment and medical results. Defendant contends that decision is at

5

odds with her status as the primary residential parent, which is a function of her exercise of four-sevenths of overnights. We are unpersuaded.

We acknowledge that presumptively, the primary residential parent will exercise authority over "minor day-to-day decisions," including a child's routine medical care. Pascale, 140 N.J. at 596-98, 611; see also Gubernat, 140 N.J. at 142 (noting "the parent having physical custody of the child is generally accorded broad responsibility in making daily child-rearing decisions"). Nonetheless, the Family Part retains discretion to fashion custody and visitation rights as it determines will serve a child's best interests. Pascale, 140 N.J. at 611. Thus, the court retains the authority to carve out an area of decision-making authority for the parent of alternate residence, if the court determines that would serve the child's best interests. Notably, N.J.S.A. 9:2-4(c) authorizes the trial court to order "[a]ny other custody arrangement as the court may determine to be in the best interests of the child."

The reason the primary caretaker usually has broad control is not to vindicate his or her "parental rights" but to foster stability for the child, who would suffer from a secondary caretaker's constant interference with the child's regular routines. Pascale, 140 N.J. at 599-600 (noting that granting the primary residential parent authority avoids "endless discussion with the secondary

caretaker"). Where unique circumstances defuse that concern, and instead counsel against the custodial parent's full autonomy over an aspect of the child's life, the primary custodial parent's presumptive authority may give way.

The primary custodial parent's authority is also based on the "'practical ground that the parent in daily contact with the child is better able to make [daily] decisions about his [or her] welfare.'" Gubernat, 140 N.J. at 142 (quoting Beverly S. Seng, Like Father, Like Child: The Rights of Parents in Their Children's Surnames, 70 Va. L. Rev. 1303, 1311 (1984)). However, when the parties' daily contact approaches equality, that factor may carry less weight.

With those considerations in mind, we discern no abuse of discretion in the court's decision to allocate to plaintiff authority over medical and dental treatment. Here, the court found, with sufficient record support, that "from the very beginning, . . . [plaintiff] demonstrated an appropriate willingness to co-parent and [defendant] attempted to marginalize him out of [the child's] life." That included impeding plaintiff's access to the child's medical information, and excluding him from decisions regarding selection of medical providers. The court's decision would prevent that interference in the future. Also, scheduling regular check-ups and related tasks are more amenable to delegation to the

secondary custodial parent than say, decisions regarding a child's grooming, dress, and other decisions that must be made on a daily basis.

The court also concluded that defendant decided to move away from the area where she and plaintiff had resided in order to make infeasible a truly equal residential custody. The court was unpersuaded by defendant's claimed reasoning for her move. She claimed she moved to be closer to her new husband's parents, yet they lived a twenty-minute drive north of her new home, closer to plaintiff, and they resided out of state almost half the year. Defendant also did not substantiate her claim that she moved to her new home for financial reasons. The court's allocation of medical and dental decision-making was intended to offset, to some extent, the advantage defendant obtained through her move. We shall not disturb that decision.

Defendant also challenges as arbitrary and insufficiently explained the trial court's final order of July 26, 2018 (Amended Order), which reduced her summer vacation time to one, instead of two weeks, as provided in the court's initial order, issued on June 14, 2018. The court explained that it amended the order because it was "the court's intention that parties have a split parenting time arrangement." In short, the court was endeavoring to equalize, to the extent feasible, the parties' parenting time. Although the explanation for the

amendment was brief, it was consistent with the court's extensive opinion explaining its decision to fashion an almost-equal parenting time arrangement.

We also reject defendant's argument that the court's parenting time decision rested on a misconception that joint physical and legal custody are "presupposed" to serve the child's best interests.  We recognize that there is no presumption in favor of joint legal and residential custody.  Beck v. Beck, 86 N.J. 480, 488 (1981).  The Supreme Court eschewed such a presumption because it "might serve as a disincentive for the meticulous fact-finding required in a custody case."  Ibid.  Nonetheless, the Court held that "joint custody is likely to foster the best interests of the child in the proper case" and "joint custody will be the preferred disposition in some matrimonial actions."  Ibid.  We do not interpret the trial court's decision to be at odds with the Court's holding in Beck.

Defendant also challenges the trial court's determination that the parties "shall share equal . . . residential custody."  The court held, "When describing an arrangement in which each parent is authorized to reside with the child for a nearly equal amount of time, the parents are deemed to share equal residential custody."  (Emphasis deleted).  Defendant argues that the court's finding is at odds with the substance of its order, which granted defendant over fifty more overnights than plaintiff.

9

We agree. The difference in parenting time is not de minimis. Thus, it is inaccurate to characterize the parenting time arrangement as "equal." Furthermore, the court found that the parties have been unable "to agree, communicate and cooperate in matters relating to their daughter," yet the ability to do so is essential to the success of a truly equal parenting arrangement. See Beck, 86 N.J. at 498-99. Consistent with Pascale, defendant shall be deemed the primary custodial parent and plaintiff the secondary custodial parent. And, consistent with Pascale, defendant shall retain authority over "minor" matters. The only exception to that authority over minor matters is the one the court expressly addressed — pertaining to medical and dental matters. We emphasize, however, that the parties' joint legal custody requires them to share authority regarding "major" decisions affecting their child's welfare. Emma v. Evans, 215 N.J. 197, 219 (2013).[1] We therefore modify paragraph one of the court's July 26, 2018 order to provide, "The parties shall henceforth share residential custody in the proportions set forth below, of the minor child . . . ."

---

[1] The trial court referred to Emma in support of its statement, "In this situation as true equal custodians, the parents are obligated and charged with the responsibility to make decisions together." However, as noted, Emma was referring to joint legal custody, not equal residential custody, and decisions regarding major matters, not the daily minor matters vested in the primary residential parent.

10

III.

We turn to the issue of the child's surname. Defendant contends the court failed to apply the presumption favoring defendant's surname choice, which Gubernat requires, see 140 N.J. at 144-45, and made factual and evidentiary errors. We disagree.

The issue of a child's surname carries great weight as a potentially powerful factor in the child's self-image and identity. Emma, 215 N.J. at 214-15. The guidepost for a court's decision in a naming dispute is the child's best interests, evaluated without a gender-based preference for either parent's surname. Gubernat, 140 N.J. at 141. The Court rejected the notion that retaining a paternal surname "is essential to maintenance of the father-child relationship," and attributed it to "forsaken, gender-based notions of parenthood." Id. at 147. Instead, the Court recognized a "presumption favoring the custodial parent's choice of name." Id. at 144-45. That presumption rests on another presumption: "The custodial parent is presumed to act in the best interests of the child . . . ." Id. at 142. Consequently, the non-custodial parent bears "the burden of

demonstrating by a preponderance of the evidence that . . . the chosen surname is not in the bests interest of the child." Id. at 145.[2]

In evaluating the child's best interests in a naming dispute, the court must examine "all factors relevant to the best interests of the child and should avoid giving weight to any interests unsupported by evidence or rooted in impermissible gender preferences." Ibid. Included among relevant factors are: "the length of time that the child has used one surname, the identification of the child as a member or part of a family unit, [and] the potential anxiety, embarrassment, or discomfort the child might experience if the child bears a surname different from the custodial parent." Id. at 141. The child's own preferences, where he or she has "sufficient maturity to express a relevant preference," are also relevant. Ibid. But, the Court's recitation of factors was not an exclusive list.

Here, the trial court found that plaintiff established that the length of time that the child used only the mother's surname was not a significant factor, as the child was then only in the first grade and could "easily adjust" to the court's

---

[2] The Gubernat presumption applies "when a parent seeks to change the name given by the only custodial parent at birth." Emma, 215 N.J. 221 n.1. It does not apply where a custodial parent unilaterally seeks to change a name on which both parents previously agreed. Id. at 221-22.

order. Notably, the child's surname will begin as it did before; it will simply be elongated to include the father's surname. To the extent the child has been assigned seats or classes in school based on where her name falls in an alphabetical listing, nothing will change. Likewise, the child's three initials, signifying her first, middle and last name, remain the same.

As for identification with the family unit, the court noted that the child will spend a significant amount of time with each parent. Defendant remarried and gave birth to a son who bears her husband's last name. Plaintiff was living with a fiancé with three children from her prior marriage. As a result, multiple people in both households have names other than the child's. Under those circumstances, the court found that including plaintiff's surname "is very significant for [the child's] ability to identify herself as a member of both family units" and would enable the child "to identify with both the maternal and paternal sides of herself."

The Court in Gubernat declared that a bond between a child and parent should not depend on bearing that parent's name. Yet, we do not interpret Gubernat to preclude considering, in connection with a naming decision, a primary custodial parent's effort to weaken the bond that would otherwise exist between the child and the secondary custodial parent. Notably, the Gubernat

A-5433-17T3

presumption favoring the custodial parent is premised on that parent's good faith effort to act in the child's best interest. Plaintiff effectively rebutted that underlying premise, as the court found that defendant attempted to marginalize and limit plaintiff's role in the child's life.

In Staradumsky v. Romanowski, 300 N.J. Super. 618, 621 (App. Div. 1997), we held, consistent with Gubernat, that it was appropriate to modify a child's name by including the father's surname as a middle name in order "to preserve some of the father's heritage." We recognized that a name can strengthen a bond with a parent, stating "'[a]nything that can reinforce the bonds between the child and her individual parents is to be encouraged, provided that the focus is through the eyes and needs of the child.'" Ibid. (quoting M.D. v. A.S.L., 275 N.J. Super. 530, 536 (Ch. Div. 1994)).

The court also found that the child would not suffer any anxiety, embarrassment or discomfort bearing a surname different from her mother's, since the name includes that of both her parents. The court's conclusion is reasonable, particularly inasmuch as her half-brother and step-father, and plaintiff's fiancé and her children have different names.

It is notable that defendant conceded at the plenary hearing that it would be appropriate for the child to have her given first name and middle name,

followed by her father's surname, then followed by defendant's surname. In short, the dispute here boils down to the naming sequence and a hyphen. The court's determination that the surname shall be a combination of the parents' names, with defendant's first, followed by a hyphen and then plaintiff's, will maintain a pre-eminent position for defendant's surname, while incorporating plaintiff's surname.

Finally, we reject defendant's argument that we should reverse the court's naming decision because the court referred to the joint custody expert's opinion on the matter, which defendant contends was a net opinion. See Townsend v. Pierre, 221 N.J. 36, 53-55 (2015) (discussing net opinion rule). Although the court noted the expert's opinion in its recitation of the expert's testimony, the court did not rely on the expert's opinion in the section of its opinion explaining its naming decision. In any event, the court was free to consider the expert's opinion as it would the opinion of any person "who can demonstrate relevant knowledge about the impact of a proposed surname change on a child, such as . . . a teacher or other adult with a close relationship with the child." Emma, 215 N.J. at 217.

We are satisfied that the court's naming decision is supported by sufficient evidence in the record, and should not be disturbed.

A-5433-17T3

## IV.

Defendant's remaining points, including her argument that the court's order should be reversed because of the trial judge's alleged bias against her, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, and modified in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5433-17T3